# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **Kimberly Hill** | Case No.: |
| **Plaintiff,** | Judge: |
| vs. | |
| **City of Dayton Police Department,**<br>**c/o City of Dayton**<br>**101 West Third Street**<br>**Dayton, Ohio 45406** | **Complaint**<br><br>**JURY DEMAND ENDORSED HEREON** |
| **And** | |
| **Richard Biehl**<br>**in his official capacity as Chief of the Dayton**<br>**Police Department**<br>**335 W. Third Street**<br>**Dayton, Ohio 45402** | |
| **Defendants.** | |

Plaintiff Kimberly Hill (hereinafter referred to as either "Plaintiff" or "Lt. Hill"), by and through counsel, states the following as her Complaint against Defendant:

## JURISDICTION

1. This action is authorized and instituted pursuant to § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000-e, et seq. Jurisdiction is founded upon 28 U.S.C. §§1331, 1337 and 1343. Plaintiff further invokes the pendent jurisdiction of this Court to hear and decide claims arising under the laws of the State of Ohio.

2. The unlawful discrimination and employment practices alleged below were and are now being committed within the State of Ohio and the Southern District, Eastern Division of this Federal Court.

3. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) excluding costs and interests.

## PARTIES

4. Plaintiff Lieutenant Kimberly Hill is the highest-ranking African-American female in the City of Dayton Police Department. Plaintiff is a resident of Montgomery County, Ohio.

5. Defendant City of Dayton is the political body and corporation responsible for the administration, operation and organization of the City of Dayton, Ohio, and all employees thereof.

6. Defendant Chief Richard Biehl is the Chief of the Dayton Police Department, and he is sued in his official capacity.

## FACTUAL BACKGROUND

7. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.

8. As an African American female, Lt. Hill is a minority on several levels. Her race and sex make Lt. Hill stand out in the Caucasian male-dominated field of law enforcement.

9. These are issues that Lt. Hill has had to deal with for her entire career with the City of Dayton. She coped with the racism and sexism she experienced, but things took a drastic turn when Lt. Hill took on the role as the Commander of the Professional Standards Bureau ("PSB").

10. Lt. Hill did not take on the PSB Commander role as the "token" black or the "token" female. She took on the role to effect real change in the department in light of the poor relationship between the City of Dayton and some of its citizens, especially African American citizens.

11. Lt. Hill is a native of Dayton and grew up in the same neighborhood as many of the citizens who bring claims against the department for racial profiling or other discriminatory treatment.

12. From her early days in her position as PSB commander, Lt. Hill began questioning the processes and taking an interest in the citizen complaints received.

13. Lt. Hill's subordinates in the department did not like Lt. Hill's course of action and did not take her authority as a female seriously.

14. Lt. Hill's authority was edged away, and her co-workers either completely ignored her or tried to make her feel she imagined the issues.

15. The discriminatory and retaliatory treatment was primarily executed by subordinates of Lt. Hill who subverted and ignored Lt. Hill's authority. Other Lieutenants and Majors from within the Police Department also used the same tactics.

16. Before Lt. Hill took over as Commander of PSB, the department was temporarily commanded by two Caucasian male Sergeants. This temporary authority gave the Sergeants exposure to additional power and control that they did not want to relinquish to a woman once Lt. Hill took over the division.

17. The City of Dayton cannot claim that it had no prior knowledge of the disparate treatment that Lt. Hill was experiencing.

18. In an email dated September 8, 2015, Lt. Hill complained to Colonel Ecton and Chief Biehl of the "vehement opposition" she was receiving at all levels from those that did not have anywhere near her experience or training. Lt. Hill requested an outside agency to perform an audit of the Professional Standards Bureau and its processes. Lt. Hill received no response to her request.

19. Lt. Hill has a passion for her job and for ensuring that citizens' complaints are investigated properly. She has not been shy about voicing her concerns to Chief Biehl and others about the problems she sees in how the Respondent replies to citizen complaints.

20. For example, in an email dated January 7, 2015, Lt. Hill explained to Major Brian Johns that she saw several issues with a Complaint Receipt involving a citizen accusing the City of Dayton of racial profiling. Lt. Hill pointed out several problems with the Complaint Receipt and recommended an additional investigation.

21. Major Johns and other Sergeants in the professional standards division treated Lt. Hill with hostility in retaliation for her reporting problems with the Complaint Receipts and other professional standards issues.

22. Lt. Hill applied for a promotion to Major in the spring of 2016. She was not promoted to the position. As Lt. Hill was the most qualified individual for the promotion and had the most seniority of all the Lieutenants that applied for the promotion, the only logical conclusion is that Lt. Hill's qualifications and seniority were not considered in the process.

23. Based on the history of opposition she has received from Respondent when attempting to dispute and make improvements to the Professional Standard Bureau, it is Lt. Hill's reasonable belief that her race and sex and her desire to make changes to the racist tactics of the City of Dayton were the driving factors in the decision not to promote her.

24. There were no deficiencies in Lt. Hill's employment history that could explain her lack of promotion. Lt. Hill was not given a performance review in 2015. In her latest review from 2014, she received only "Exceeds" and "Meets Expectations" reviews in every category.

25. In her 2014 review, Colonel Ecton wrote: "For most of 2014, the incumbent spent part of the time attending the Certified Law Enforcement Executives program which slowed development in the incumbent's current assignment. I anticipate that the 2015 performance rating period will have more "Exceeded Standard" ratings as the ***incumbent shows strengths in leading, motivating and coaching***."

26. Instead of promoting Lt. Hill based on seniority as had been done in previous years, the City of Dayton implemented an "assessment process" when it was time for Lt. Hill to be promoted.

27. In 2012, when several Caucasian males were promoted to Major, there was no "assessment process."

28. In 2015 when then Major Ecton (African American Male) applied for promotion from Major to Colonel, the City implemented the "assessment process." Ecton was eventually promoted to Colonel, but the City then reorganized the structure of the management of the Police Department and effectively gave Major Johns (Caucasian Male) a high-ranking position as Assistant Chief while he was still a Major.

29. In October of 2014, before Major Ecton was promoted to Lt. Colonel, there was only one Lt. Colonel position, and there were no other Majors on the same level as the Lt. Colonel.

30. Soon after Colonel Ecton was promoted, the organization structure was changed to create essentially another Lt. Colonel spot for Major Johns as the "Deputy Director and Assistant Chief."

31. Major Johns was also appointed to Lt. Colonel along with Colonel Ecton. There is no precedent in the Police Department to have two active Lt. Colonels.

32. It is clear from the actions of the City of Dayton that the promotion of Major Johns was implemented to usurp authority from Colonel Ecton due to the City's racist treatment of African Americans in positions of authority.

33. Both times an African American was the next senior person and a promotion opportunity opened, an "assessment center" and interview process were put in place. This never occurred when the senior person was a Caucasian male.

34. Plaintiff filed a timely Charge of Discrimination dually with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC").

35. On or about May 18, 2017, Plaintiff received a Letter of Determination from the OCRC. The Commission found that "**there was enough information to show Charging Party [Lt. Hill] was subjected to discrimination based on her membership in a protected class(es)**" and therefore determined that there was probable cause that the City of Dayton engaged in unlawful discriminatory practices under ORC 4112.

36. The EEOC provided Lt. Hill with a "Right to Sue" letter dated June 26, 2017. (EXHIBIT 1). The Plaintiff has filed this action under Title VII within ninety (90) days after receipt of the letter from the EEOC.

## COUNT I

### Race Discrimination – Title VII of the Civil Rights Act and RC §4112.02

37. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.
38. At all times herein relevant, Plaintiff was a member of a class protected from discrimination.
39. Defendants have engaged in intentional race discrimination in the terms and conditions of Plaintiff's employment, including, but not limited to, failure to promote, denial of training, and discriminatory departmental policy changes.
40. During Plaintiff's employment, similarly situated non-protected employees were treated more favorably than Plaintiff.
41. Defendants' discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.
42. Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.
43. Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. §1981a.

## COUNT II

### Sex Discrimination – Title VII of the Civil Rights Act and RC §4112.02

44. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.
45. At all times herein relevant, Plaintiff was a member of a class protected from discrimination.

46. Defendants have engaged in intentional sex discrimination in the terms and conditions of Plaintiff's employment, including, but not limited to, failure to promote, denial of training, and discriminatory departmental policy changes.

47. During Plaintiff's employment, similarly situated non-protected employees were treated more favorably than Plaintiff.

48. Defendants' discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

49. Defendants' actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

50. Defendants have engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages pursuant to 42 U.S.C. §1981a.

## COUNT III

### Retaliation – Title VII of the Civil Rights Act and O.R.C. § 4112.02

51. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.

52. Plaintiff engaged in a protected activity by, *inter alia,* opposing the discriminatory treatment she was suffering.

53. The Defendants intentionally retaliated against Plaintiff for engaging in one or more protected activities by

    (a) denying promotion;

    (b) denying training;

    (c) subjecting Plaintiff to changes in the department policies that had an adverse effect on Plaintiff;

    (d) otherwise discriminating against Plaintiff in the terms, privileges, and conditions of employment.

54. Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages and punitive damages and all other relief available under this section.

55. At all times herein relevant, Defendants acted in conscious and/or reckless disregard for Plaintiff's rights, with great probability that their acts and omissions would cause substantial harm to Plaintiff.

56. As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, included but not limited to serious emotional distress and loss of salary, benefits, and other terms, privileges and conditions of employment for which the Defendant is liable.

## COUNT III

### (Sex and Race Discrimination/Retaliation – O.R.C. §4112.99

57. Plaintiff incorporates the preceding Paragraphs, as if fully rewritten herein.

58. The Defendants discriminated against Plaintiff because of her sex and race by creating a hostile work environment and treating similarly situated non-protected employees more favorably than Plaintiff in violation of §4112.02 of the Ohio Revised Code.

59. Defendants' violations of §4112.02 of the Ohio Revised Code are violations of §4112.99 of the Ohio Revised Code.

60. Defendants' conduct was willful, wanton, reckless, and/or malicious for which Defendants are liable for compensatory damages and punitive damages and all other relief available under this section.

61. As the direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, included but not limited to serious emotional distress and loss of salary, benefits, and other terms, privileges and conditions of employment for which the Defendants are liable.

WHEREFORE, Plaintiff demands judgment against all Defendants in an amount in excess of Seventy-Five Thousand ($75,000), back pay and benefits, front pay and benefits, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, costs, attorney fees, and other such relief as the court may deem just and proper.

Respectfully submitted,

*/s/ Chanda L. Brown*

Chanda L. Brown (0081076)
Sean L. Walton (0088401)
WALTON + BROWN, LLP
395 East Broad Street, Suite 200
Columbus, Ohio 43215
Telephone:     (614) 636-3476
Facsimile:     (614) 636-3453
Email:  cbrown@waltonbrownlaw.com
        swalton@waltonbrownlaw.com
*Attorneys for Plaintiff Kimberly Hill*

## JURY DEMAND

Plaintiff hereby requests a jury to hear all issues so triable.

*/s/ Chanda L. Brown*

Chanda L. Brown (0081076)